Sealed By Order Of Court                           1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,              :      14-CR-609

                v.                     :      U.S. Courthouse
                                              Brooklyn, New York
JOSE HAWILLA, Traffic SPORTS
USA, INC., and Traffic SPORTS
INTERNATIONAL, INC.,                   :
                                              December 12, 2014
                Defendants.    :      10:15 o'clock a.m.

- - - - - - - - - - - - - - - - - - - X

                    TRANSCRIPT OF PLEA
           BEFORE THE HONORABLE RAYMOND J. DEARIE
           SENIOR UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:            LORETTA E. LYNCH
                               United States Attorney
                               By:  EVAN NORRIS
                                    AMANDA HECTOR
                                    SAM NITZE
                                    BRIAN MORRIS
                               Assistant U.S. Attorneys
                               225 Cadman Plaza East
                               Brooklyn, New York 11201

For the Defendant:             STEPHEN E. KAUFMAN, ESQ.
                               LEWIS J. LIMAN, ESQ.
                               ANDREW KAUFMAN, ESQ.
                               KATE CURRIE, ESQ.

Court Reporter:                Anthony M. Mancuso
                               225 Cadman Plaza East
                               Brooklyn, New York 11201
                               (718) 613-2419

Proceedings recorded by mechanical stenography, transcript
produced by CAT.

Sealed By Order Of Court                      2

1          THE CLERK:  Can I ask the Portuguese interpreter to

2   come here.

3          We are on this morning for an arraignment and a

4   plea.  This is USA versus John Doe, docket number CR 14-609.

5   And I have my Portuguese interpreter with us this morning,

6   Mr. Theodore Fink.

7          Mr. Fink, I'm going to ask you to raise your right

8   hand.

9          (Interpreter sworn.)

10          THE CLERK:  Thank you.

11          I ask the attorneys to the note their appearances

12   for the record, beginning with counsel for the government.

13          MR. NORRIS:  For the government, Evan Norris, Amanda

14   Hector, Sam Nitze and Brian Morris.  Good morning again, your

15   Honor.

16          THE COURT:  Good morning.

17          THE CLERK:  Excuse me.  Can I ask the interpreter to

18   stand next to your client.

19          Sir, you could stand right here, the attorney.

20          MR. LIMAN:  Your Honor, for the defense Lewis Liman

21   and Kate Currie from the law firm of Cleary Gottlieb and

22   Steven Kaufman and Andrew Kaufman from the Law Offices of

23   Steven E. Kaufman, PC.

24          THE COURT:  Good morning, everyone.

25          A couple of preliminary notes.  This is now a sealed

1  proceeding by order of the court.  Any reproduction,

2  transcript, digital material or otherwise is to be sealed with

3  the understanding that counsel and only counsel will be

4  provided with a suitable copy thereof.

5         I emphasize to our interpreter this is a sealed

6  proceeding.  The public has been excluded on application by

7  the government granted moments ago by this court.  Nothing

8  that goes on here is to be repeated outside the courtroom.

9         With that I think we can now identify the defendant

10 by name, Mr. Hawilla.  How do you pronounce your name, sir?

11        THE DEFENDANT:  Jose Hawilla.

12        THE COURT:  Mr. Hawilla, good morning.

13        THE DEFENDANT:  Good morning.

14        THE COURT:  I understand, based on the materials

15 presented to me, that there's a disposition in the case

16 arrived at, I take it, consistent with these papers?

17        MR. NORRIS:  That's correct, your Honor.

18        THE COURT:  Ms. Mulqueen, swear the defendant.

19        THE CLERK:  Certainly, your Honor.

20        (Defendant sworn.)

21        THE COURT:  Mr. Hawilla, I have to ask you some

22 questions, as I'm sure counsel has told you.  If there's

23 anything that I ask that is not entirely clear, make sure you

24 tell me that.  We are in no hurry here.  If you wish at any

25 time to confer with counsel, simply let me know that and I

Sealed By Order Of Court                                4

1   will give you whatever time you need to speak privately with

2   your lawyer

3              Do you understand, sir?

4              THE DEFENDANT:   Okay.

5              THE COURT:   You are now under oath.   That means of

6   course that your answers to my questions must be truthful.   If

7   they were not in any material way you could subject yourself

8   to further charges for the offense of perjury, which is lying

9   under oath.

10             Do you understand, sir?

11             THE DEFENDANT:   I do.

12             THE COURT:   Again, at any time if you need time to

13  confer with counsel, let me know.

14             I begin by asking you state your full name for us

15  again.

16             THE DEFENDANT:   Jose Hawilla.

17             THE COURT:   Mr. Hawilla, how old are you.

18             THE DEFENDANT:   71.

19             THE COURT:   And what schooling or formal education

20  have you had?

21             THE DEFENDANT:   I'm a bachelor of law.   I'm a

22  lawyer.

23             THE COURT:   Okay.   Do you speak any English?

24             THE DEFENDANT:   I understand a little, but I don't

25  speak.

Sealed By Order Of Court                    5

1      THE COURT:  If at any time you have difficulty

2  understanding the interpreter, let me know immediately.

3      THE DEFENDANT:  Okay.

4      THE COURT:  Tell me about your health, generally.

5  How is your health?

6      THE DEFENDANT:  I had some health problems.  During

7  the course of this investigation I had -- prior to this I had

8  a lung problem which got worse here which became an illness

9  called pulmonary hypertension.

10      I had a cancer underneath my tongue, which was

11  treated with radiotherapy and chemotherapy for some months.  I

12  did six sessions of chemotherapy and 33 of radiotherapy.  And

13  now I finished and I'm in recuperation.  The doctors say that

14  I'm free of the illness.  But I have to do follow-up, which I

15  am doing twice a month, and I'm doing tests at the same time

16  that I am doing treatment for my lung.  I take medication.  I

17  do physiotherapy one hour a day and I sleep with an oxygen

18  apparatus.

19      Apart from that, when I finish that I have to do --

20  I have to put a stent in one of my coronary arteries.  Those

21  are my problems.  And I take several medications a day.

22      THE COURT:  Well, that's certainly enough for one

23  man.

24      The medication, are you able to concentrate?

25      THE DEFENDANT:  What do you mean concentrate?

1          THE COURT:   Are you able to concentrate on the

2    proceedings today?

3          THE DEFENDANT:   Yes, of course.

4          THE COURT:   Are you reasonably comfortable?

5          THE DEFENDANT:   Yes.

6          THE COURT:   Gentlemen, in your discussions with your

7    client, have you ever had difficulty communicating with him,

8    obviously, through the services of an interpreter?

9          THE DEFENDANT:   No.

10         THE COURT:   I address the same question to counsel.

11   Have you had any difficulties communicating with your client.

12         MR. S. KAUFMAN:   None, your Honor.

13         MR. LIMAN:   No, your Honor.

14         THE COURT:   All right.

15         THE COURT:   Mr. Hawilla, the first order of business

16   this morning is what we commonly refer to as a waiver of

17   indictment.   The charges to which you are apparently prepared

18   to plead guilty are all a felony violations of law because

19   each carries with it a potential sentence in excess of one

20   year.   Under our constitution the United States Attorney has

21   no power to charge you or anyone with any felony violation of

22   law.   Only a grand jury, composed of members of our community,

23   are empowered to decide whether or not an individual is to be

24   charged with a felony, unless, of course, you waive your right

25   to proceed before the grand jury.   It's my impression, based

1  upon documents that I have reviewed, that it is your intention

2  to waive indictment, waive grand jury indictment I should say.

3         Before you do that, I have to tell you what an a

4  grand jury is and I am no doubt repeating what your attorneys

5  have told you.  So bear with me for a few minutes.

6         The grand jury is a group of people drawn randomly

7  from our community.  No more than 23 persons constitute a

8  grand jury.  There must be 16 grand jurors present to hear

9  evidence and 12 grand jurors must agree that there is probable

10  cause to believe that you have committed an offense before

11  that grand jury is, pursuant to law, authorized to charge you

12  with any felony.  The grand jury doesn't decide whether you

13  are guilty or not guilty but only whether you could be

14  charged.  You have the right to have this matter referred to a

15  grand jury for that purpose and, if you exercise that right,

16  we could not proceed against you unless and until the grand

17  jury decided that charges should be filed.  If you waive that

18  right, the government is then permitted, by way of

19  information, to charge you with felony violation of law.

20         Now, let me ask you, sir:  Have you discussed your

21  right to proceed before the grand jury with your attorney?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Do you feel you understand it?

24         THE DEFENDANT:  Yes.

25         THE COURT:  And is it your intention to waive your

1    right to proceed before the grand jury?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Now, before I accept your waiver,

4    please, understand that if the grand jury decided that

5    probable cause had not been established, the government would

6    be powerless to charge you with any felony violation of law.

7    They could present it to another grand jury.  They could

8    re-present it to the same grand jury.  But absent an

9    indictment by a grand jury on the finding of probable cause

10   they would be powerless to charge you.

11             Do you understand?

12             Knowing that, do you waive your rights to proceed

13   before the grand jury?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Gentlemen, any reservation at all

16   concerning the defendant's understanding and his willingness

17   to waive indictment?

18             MR. LIMAN:  No, your Honor.

19             THE COURT:  The court finds that the defendant has,

20   in the presence of counsel and with the advice of counsel and

21   upon inquiry of the court, knowingly and voluntarily waived

22   his rights to proceed before the grand jury and I will endorse

23   the waiver form accordingly:

24             Now, Mr. Hawilla, we now proceed just as if the

25   grand jury had charged you with these violations.  Having said

1    that, you have an absolute right to plead not guilty to these

2    charges.

3              Do you understand that?

4              THE DEFENDANT:   Yes.

5              THE COURT:   In common parlance, you have an a right

6    to call it all off.

7              Do you understand?

8              THE DEFENDANT:   Yes.

9              THE COURT:   If you were to plead not guilty under

10   our constitution and laws you would be entitled to a speedy

11   and public trial by jury, with the assistance, of course, of

12   counsel.

13             At trial you would be presumed innocent of the

14   charges.   The government would have to overcome or try to

15   overcome this presumption of innocence and prove you guilty by

16   competent evidence and beyond a reasonable doubt.   You, sir,

17   would not be required to prove anything.   There would be no

18   burden whatsoever on you to advance any proof whatsoever.   You

19   could sit back, do nothing, say nothing, simply put the

20   government to its burden of attempting to satisfy the jury of

21   your guilt.

22             Do you understand that?

23             THE DEFENDANT:   Yes.

24             THE COURT:   That means, of course, if the jury were

25   to find you not guilty, that would conclude these proceedings

1  and the government would be powerless to continue with these

2  charges.

3              Do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Now, in the course of the trial

6  witnesses for the government obviously would come to court,

7  testify under oath in your presence and in the presence of

8  your attorneys.  You would have the right, therefore, to

9  confront each of these witnesses face to face here in the

10 courtroom.

11             You would have the right to counsel to cross-examine

12 each of the government's witnesses and when appropriate to

13 object to evidence offered by the government.  You would have

14 the right to offer evidence in your own defense, although I

15 emphasize you would not be obligated to do so.  And you would

16 have the right to compel the presence of witnesses through the

17 issue of a court order or subpoena, requiring witnesses to

18 come to this courtroom and give testimony in your defense.

19             Do you understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  All right.

22             Mr. Hawilla, you also have a right to remain silent.

23 No one can make you testify, not your lawyers, the government

24 lawyers or the court.  And the decision whether or not to

25 testify is your own to make, not counsel's.  You would make it

1  obviously with the advice of counsel.  But it is ultimately

2  your decision, just as a decision to plead guilty, your

3  personal decision.

4           Do you understand that?

5           THE DEFENDANT:  Yes.

6           THE COURT:  All right.

7           Now, if you plead guilty, and I accept your plea,

8  you give up all those rights forever.  There will be no trial,

9  with the possible exception of appeal, which I will cover in a

10 few minutes.  There is no right to an appeal.  I will simply

11 enter a judgment of guilty based on your plea of guilty, based

12 on what you tell me.

13          Do you follow?

14          THE DEFENDANT:  Yes.

15          THE COURT:  And before I can actually accept your

16 plea I'm required, under the federal rules, to satisfy myself

17 that you are guilty of these offenses.  To do that, in a few

18 minutes I'll ask you some questions.  In responding to my

19 questions you give up your right to remain silent quite

20 obviously.  You give up your right not to incriminate yourself

21 and you'll be called upon here in open court -- I qualify open

22 court -- in a sealed courtroom proceeding, nonetheless, to

23 acknowledge your guilt.

24          Do you understand that?

25          THE DEFENDANT:  Yes.

1          THE COURT:  Are you willing then to give up your

2     right to a trial and these other rights I've just explained?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Do you have any questions about anything

5     we've covered so far?

6          THE DEFENDANT:  No.

7          THE COURT:  I have a copy of an agreement which

8     we'll mark.

9          THE CLERK:  We'll mark this as Court Exhibit A.

10         THE COURT:  Okay.

11         MR. NORRIS:  Your Honor, I'm handing up the

12    original.  I think your Honor had a copy from yesterday.

13         THE COURT:  This is Court Exhibit A, a document,

14    23-page document, typewritten document, that reflects 21

15    numbered paragraphs and purports to set out the terms of an

16    agreement you have arrived at through counsel, with the United

17    States government.

18         Are you familiar with this document?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Let me ask you this:  Have you read it

21    carefully?

22         THE DEFENDANT:  Yes.

23         THE COURT:  You understand, Mr. Hawilla, that this

24    is a very important document in terms of your life and future

25    at this time?

1           Is that fair to say?

2           THE DEFENDANT:  Yes.

3           THE COURT:  And did you read it with that degree of

4   care?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Has counsel answered any questions you

7   might have had regarding the document?

8           THE DEFENDANT:  Yes.

9           THE COURT:  Do you have any questions that you would

10  like to put to the court about this document at this time?

11          THE DEFENDANT:  No.

12          THE COURT:  As far as you know, sir, is your

13  agreement with the government fully and accurately reflected

14  in this document?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Are there any other understandings,

17  agreements, that have contributed to your decision to offer

18  pleas of guilty that are not reflect in Court Exhibit A?

19          THE DEFENDANT:  No.

20          THE COURT:  Counsel, can you confirm that?

21          MR. S. KAUFMAN:  Yes, your Honor.  That is

22  confirmed.

23          MR. NORRIS:  Yes, your Honor.  I can confirm that

24  for the government.

25          THE COURT:  All right.  We'll come back to that in

1    just a moment.  With counsel's permission, I'll waive the

2    formal reading of the charges.

3               MR. LIMAN:   That's fine, your Honor.

4               THE COURT:   The information reflects three specific

5    charges.

6               MR. NORRIS:   Your Honor, if I may, it has four

7    counts.

8               THE COURT:   I'm sorry.

9               MR. NORRIS:   Four counts.

10              THE COURT:   I beg your pardon.

11              I'm looking at the charging language itself.  If you

12   wear bear with me, I'm going to read limited portions of the

13   document.  On page 52, beginning with paragraph 121:   The

14   allegations contained in paragraphs 1 through 120 are

15   realleged and incorporated as if fully set forth in this

16   paragraph.

17              In or about and between January 1991 and the

18   present, both dates being approximate and inclusive, within

19   the Eastern District of New York and elsewhere, the defendant

20   Jose Hawilla, together with others, being a person employed by

21   and associated with the enterprise, which engaged in, and the

22   acts of which affect, interstate and foreign commerce, did

23   knowingly and intentionally conspire to violate Title 18,

24   United States Code, Section 1962 (c), that is, to conduct and

25   participate, directly and indirectly, in the conduct of the

Sealed By Order Of Court                    15

1    affairs of such enterprise through a pattern of racketeering

2    activity, as defined in Title 18, United States Code, Sections

3    1961 (1) (5).

4            Paragraph 123:   The pattern of the racketeering

5    activity through which the defendant Jose Hawilla, together

6    with others, agreed to conduct and part, directly and

7    indirectly, in the conduct of the affairs of the enterprise

8    consisted of multiple acts indictable under:

9            Title 18, United States Code, Section 1343;

10

11           Title 18 United States Code, Section 1956;

12

13           Title 18 United States Code Section 1952;

14

15           Title 18 United States Code, Section 1512;

16   and multiple acts involving bribery, in violation of New York

17   State Penal Law sections 180.03 and 180.08.   Hawilla agreed

18   that a conspirator would commit at least two acts of

19   racketeering activity --

20           THE CLERK:  I'm sorry, Judge Dearie.   The

21   interpreter needs time.

22           THE COURT:   Where are you?

23           THE INTERPRETER:  I've got to law Section 18.03 and

24   180.08.

25           THE COURT:   You are ahead of me.

ANTHONY M. MANCUSO,   CSR  OFFICIAL COURT REPORTER

1           MR. LIMAN:  He has not read the last sentence of

2    count one.

3           THE COURT:  It seems to me the appropriate way of

4    doing this, given counsel's familiarity with these charges,

5    and the text of them, is to simply let the interpreter read

6    the paragraphs to the defendant.  I'm sure he's equally

7    familiar with them.  But for the sake of the record, we need

8    to at least present the charging language.

9               Is there any objection to that?

10          MR. LIMAN:  No, your Honor.

11          MR. NORRIS:  No, your Honor.

12          THE COURT:  123, 125, 127 and 129.

13          (Interpreter reading to the defendant.)

14          THE COURT:  All right.  That's 129 you have just

15   completed?

16          MR. S. KAUFMAN:  Yes, your Honor.

17          THE COURT:  For the record, the interpreter has just

18   read aloud in the presence of the defendant the charging

19   paragraphs of the four counts, including 122 through and

20   including 129.

21              Addressing the interpreter:  Have I stated that

22   accurately?

23          THE INTERPRETER:  Yes, your Honor.

24          THE COURT:  Thank you.

25          Mr. Hawilla, I understand you have discussed these

1    charges with your lawyers.  Just for the record, confirm for

2    me that you have?

3              Have you discussed these charges with your

4    attorneys?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Do you have a full understanding as to

7    what you are charged with in each of these four counts?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Any questions that you would like to put

10   to me about the charges?

11             THE DEFENDANT:  No.

12             THE COURT:  Okay.  Well I have a couple for you.

13             Three of the counts charge the offense of

14   conspiracy.  What is your understanding, sir, of the nature of

15   conspiracy?

16             THE DEFENDANT:  It's different from my

17   understanding.  From what I understood here, conspiracy is you

18   agree with one or more other persons, transaction, bank

19   transaction, for example.

20             THE COURT:  That's somehow a violation of law?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Okay.  You get an A minus on that one.

23   It's an agreement, pure and simple, with at least one other

24   person, as you have noted, to do something that violates the

25   law.  As a general rule, it doesn't matter whether that

1   something is ever done.   The essence of the charges is the

2   agreement itself.

3            Do you understand that?

4            THE DEFENDANT:   Yes, I do understand.

5            Can I say something to my attorney?

6            THE COURT:   Sure.   Take your time, step back.

7            If you need room, we can put you someplace else.

8            THE DEFENDANT:   No.   Thank you.

9            (Defendant confers with counsel.)

10            THE COURT:   I left the bench to make sure you had

11   plenty of time to discuss matters with counsel.   I'm pleased

12   that you availed yourself of that opportunity.   Don't be

13   reluctant to do it again, should the circumstances warrant.

14            I think we had asked, just to repeat, that you

15   discussed the charges, you feel you understand the charges and

16   you now have a firm understanding of the nature of the

17   conspiracy?

18            THE DEFENDANT:   Yes.

19            THE COURT:   Now, let me turn my attention back to

20   your agreement and discuss important information relative to

21   sentencing.

22            Now this comes to two or three, depending upon how

23   you look at it, chapters, if you will.   The first being the

24   statutory penalty that the Congress of the United States has

25   written into the law with respect to each of the four charges

1   and this information you are no doubt aware is reflected in

2   paragraph one of your agreement with the government.

3          Are you familiar with that information, sir?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Those are the penalties that you face.

6   Just by way of example, with respect to charge one, the

7   statutory penalty involves a maximum of 20 years in prison.

8   In effect, that's the worst that can happen with respect to

9   count one.  And if sentenced to a period of incarceration you

10  face an a period of supervised release.  Supervised release

11  is, as the term suggests, an a period of supervision that

12  begins to run the moment you are released from custody.  If

13  you were to violate the terms or conditions of your supervised

14  release at any time during the period of supervision you could

15  be returned to prison under the terms of my sentence in this

16  case for up to two years without any credit being given to you

17  for the time you spent at liberty under supervision.

18         Do you understand that, sir?

19         THE DEFENDANT:  Yes.

20         THE COURT:  With respect to each of the counts, you

21  face a fine.  Relative to count one, the maximum fine is the

22  greater of $250,000 or by statute twice the gross profits of

23  the enterprise, which no doubt would be a sizable sum I

24  suppose.

25         Is that likely to be in play here?

1        MR. NORRIS:  Yes, your Honor.

2        THE COURT:  Restitution is required, mandatory, in

3   an amount to be determined by the court with the assistance of

4   counsel.  Each count carries with it a special assessment of

5   $100.  And I also note for the record that you have consented

6   to a forfeiture as is laid out in paragraphs eight through

7   fifteen of this agreement.  And the remaining counts carry

8   with it the same sort of the penalty or potential penalty and

9   a you should understand by law I could impose these sentences

10  consecutively.

11       Do you understand that, sir?

12       THE DEFENDANT:  Yes.

13       THE COURT:  Those are the statutory penalties.

14       Now, chapter two in our sentencing discussion

15  involves what's commonly called the sentencing guidelines.

16  These guidelines are advisory.  But I am required to calculate

17  the sentencing guidelines range as the first step in

18  determining a reasonable sentence.

19       Have you discussed the guidelines with your counsel?

20       THE DEFENDANT:  Yes.

21       THE COURT:  The guidelines take into consideration

22  the offense, of course, your role in it, any aggravating or

23  mitigating circumstances and essentially upon calculation

24  provide a range of months in which it is suggested that I find

25  a sentence to impose upon you.  As I say, they are not

Case 1:14-cr-00609-RJD-RML  Document 60  Filed 10/14/15  Page 21 of 35 PageID #: 556

1   mandatory.  I am required to consider them, therefore, I am

2   required to calculate them.

3           And I won't be in a position, Mr. Hawilla, to

4   calculate them with any certainty in this case until after I

5   have received the probation department's presentence report.

6   You will see that report before I do, as will counsel, of

7   course.  You'll be given an opportunity to voice objection,

8   comments as the case may be.  Eventually, the report will come

9   to me, as will counsel's submissions.  With their assistance I

10  will then compute the sentencing guidelines range and arrive

11  at a range consistent with my understanding of the facts and

12  my application of the sentencing guidelines.  We may all

13  agree.  There may be disagreement.  I can't tell you today

14  where we'll end up.  All I can tell you is that I have to

15  calculate them and consider the advisory range before

16  concluding my sentencing judgment.

17          And that gets us to the critical chapter three in

18  the sentencing discussion.  What the law requires,

19  Mr. Hawilla, is that I consider any number of factors in, of

20  course, the guidelines, various statutory factors that I must

21  consider, common to all cases or most cases, any other

22  information that's brought to my attention that speaks to the

23  question of sentence and the appropriateness of sentence,

24  brought to my attention by your counsel, by government counsel

25  any related applications, anything at all that speaks to me

1    about the wisdom of an appropriate sentence.

2            And then I am required by law to impose what the law

3    would call a reasonable sentence.  If you think I have imposed

4    an unreasonable sentence, that is, goes beyond what I have

5    calculated as the guidelines sentencing range, you have the

6    right to appeal to a higher court that sentence.

7            Do you understand that?

8            THE DEFENDANT:  Yes.

9            THE COURT:  Now, I condition your right of appeal on

10   the imposition of a sentence above the guidelines range and I

11   do that because of paragraph three of your agreement.  It

12   reads as follows:  The defendant agrees not to file an appeal,

13   or otherwise challenge, by petition pursuant to 28 USC 2255 or

14   any other provision, the conviction or sentence in the event

15   that the court imposes a term of imprisonment within or below

16   the applicable guidelines range determine by the court at

17   sentencing.

18           Mr. Hawilla, the way I read that -- just my

19   interpretation -- no matter what I do in calculating the

20   sentence, including possible miscalculation, error, in fact or

21   law, whatever I calculate marks the boundaries of your right

22   to appeal.  All right.  Because it goes on to say:  This

23   waiver is binding without regard to the sentencing analysis

24   used by the court.

25           So, in a way it's a sort of leap of fate that I will

1    calculate the sentencing guidelines range in an accurate and

2    reasonable manner.  Because you'll have no right of appeal,

3    the way I read the provision, as long as I stay within that

4    advisory range or below.

5              Do you understand?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Any questions?

8              THE DEFENDANT:  No.

9              THE COURT:  All right.

10             A couple of other things here that I want to touch

11   on.

12             Now, obviously, this is a very detailed agreement.

13   I would like to turn my attention briefly to paragraph seven.

14   This is a sort of a curious paragraph now in the post-Booker

15   days.  I'm note quite sure how to explain it, but I will do my

16   best.

17             This paragraph addresses the possibility that at or

18   before the time of sentence the government will make an

19   application to the court pursuant to Section 5K1.1 of the

20   guidelines, presenting to the court what the government

21   believes is substantial assistance rendered by you to law

22   enforcement.

23             I just want you to know that if that application is

24   made, it doesn't require me to do anything.  It simply

25   authorizes me to sentence you, from the government's

1   perspective, at any point at or below the guidelines range.

2           Do you understand that?

3           THE DEFENDANT:  Yes.

4           THE COURT:  So you may satisfy the government, but

5   it may not satisfy the court if you get what I am saying.

6           Do you follow?

7           THE DEFENDANT:  Yes.

8           THE COURT:  I don't know how else to say it because

9   in the post-Booker era, there's no mandatory minimum.  It's I

10  guess best left the way it is, unless counsel think otherwise.

11          And then finally there is a provision in paragraph

12  nine regarding the payment of a sizable sum of money.  I don't

13  know if it's part of the agreement.  Can you educate me on

14  that?

15          MR. NORRIS:  On the forfeiture provision?

16          THE COURT:  The forfeiture provision I understand.

17  There's a schedule of payments here.

18          MR. NORRIS:  Yes.

19          THE COURT:  That's toward the forfeiture?

20          MR. NORRIS:  Yes.  I'm happy to go through it, your

21  Honor.

22          THE COURT:  No.  I just wanted to confirm that

23  that's what we're talking about.

24          There's a lot in here that I have not touched on.

25  Is there anything that counsel wishes me to address in the

1   agreement?

2           There being no response --

3           MR. NORRIS:  One other thing, your Honor, is in

4   paragraph 19 it discusses the immigration consequences.

5           THE COURT:  Thank you.

6           MR. NORRIS:  Of the plea.

7           THE COURT:  I take it Mr. Hawilla is not an American

8   citizen.

9           MR. LIMAN:  That's correct, your Honor.

10          THE COURT:  Mr. Hawilla, there are other

11  consequences to your plea and eventual conviction, that is,

12  your removal from the United States.  I'm not telling you that

13  it's inevitable.  I don't know that it is.  It may well be.

14  But the likely consequence of your conviction here is that you

15  will be removed from the United States.

16          Do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Thank you for bringing that to my

19  attention.

20          Are you ready to plead, sir?

21          THE DEFENDANT:  Yes.

22          THE COURT:  What is your plea to count one of the

23  information?

24          THE DEFENDANT:  Guilty.

25          THE COURT:  And count 2?

Sealed By Order Of Court                    26

1          THE DEFENDANT:  Guilty.

2          THE COURT:  And count three?

3          THE DEFENDANT:  Guilty.

4          THE COURT:  And, finally, count four?

5          THE DEFENDANT:  Guilty.

6          THE COURT:  Are you making these pleas voluntarily

7  and of your own free will?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Has anybody threatened or forced you in

10  any way to plead guilty?

11          THE DEFENDANT:  No.

12          THE COURT:  Are there any agreements or

13  understandings that I have not been told about today that have

14  contributed to your decision to plead guilty?

15          THE DEFENDANT:  No.

16          THE COURT:  Has anyone given you any assurance as to

17  what I will do on sentence?

18          THE DEFENDANT:  No.

19          THE COURT:  All right.

20          Mr. Hawilla, you've assured me that you have

21  thoroughly reviewed the charges with counsel relating to the

22  three conspiracies and the obstruction of justice count.

23          Tell me what you did, sir.

24          MR. LIMAN:  Your Honor, our client has prepared a

25  statement, if he could read that.

1          THE COURT:  By all means.

2          THE INTERPRETER:  Should I just translate that or

3     just read the English?

4          THE COURT:  I would like to hear him read it and you

5     translate it.

6          THE INTERPRETER:  Okay.

7          THE DEFENDANT:  My name is Jose Hawilla.

8          Since approximately 1980 I started to develop a

9     project of sports marketing through my company Traffic.  I

10    bought the rights to football events and started promoting

11    them in a legitimate way throughout the world.

12         Approximately in 1991 when I went to renew a

13    contract to one of these events, the Copa America, an official

14    associated with FIFA, the agency which is in charge of world

15    soccer and its federation CONMEBOL, he demanded from me a

16    bribe for him to sign the contract.  I needed that contract

17    because I had already assumed future engagements --

18    commitments and even though I didn't want to I agreed to pay

19    the bribe to that official.

20         After this and until 2013, other soccer officials

21    came to me and those with whom I associated in business to

22    demand bribes to sign or renew contracts.  I agreed that

23    undisclosed bribe payments would be made to those soccer

24    officials for contracts for the marketing rights to various

25    tournaments and other rights associated with soccer.

Sealed By Order Of Court                    28

1        I agreed to make bribe and kickback payments which

2   would be undisclosed for contracts for the Copa America, the

3   Gold Cup, the Copa de Brasil and the ▮▮▮▮ sponsorship for the

4   Brazilian National Team.

5        I used U.S. financial institutions and wire

6   facilities of the United States to make some of these bribe

7   and kickback payments, as well as to make legitimate payments

8   relating to these rights, all of which promoted these schemes.

9        MR. NORRIS:  Let's pause for one second.  I'm not

10  sure the court reporter heard the sponsorship you referred to

11  as the ▮▮▮▮▮▮▮, correct?

12       THE INTERPRETER:  Correct.

13       THE COURT:  Did you say ▮▮▮▮▮▮▮?

14       THE DEFENDANT:  Yes.

15       THE COURT:  Go ahead.

16       THE DEFENDANT:  During this period FIFA, CONCACAF

17  and other relate soccer organizations and sports marketing

18  companies were engaged in promoting and/or regulating the

19  sport of soccer worldwide as part of an ongoing organization.

20  Among other things, these organizations held sports-related

21  events and conducted business in the United States and used

22  financial institutions based in the United States.

23       With respect to counts two and three, I knowingly

24  and wilfully agreed with members of the two other similar

25  companies that had made commitments to pay bribes in

1   connection with the Copa America that Traffic would contribute

2   to these bribe payments.  The undisclosed bribes were paid to

3   officials who held positions of authority and trust within

4   FIFA and two of its confederations CONCACAF and CONMEBOL, to

5   secure marketing rights related to the Copa America

6   Tournament.  I agreed to use and did use Traffic's account at

7   a bank in the United States and the wire facilities of the

8   United States to reimburse a portion of the expense paid by

9   the other sports marketing organizations by transferring money

10  to financial institutions in other countries.  The transfers

11  were made by banks in New York.

12          Finally, in connection with count four, before my

13  arrest, when I was told by someone that the FBI was asking

14  about bribes paid by Traffic, I asked him not to mention my

15  name or the name of Traffic to the FBI.  Also, after my

16  arrest, when I was questioned by the government in Brooklyn in

17  connection with its grand jury investigation, I withheld

18  information from it including about ongoing criminal activity

19  that were relevant to its investigation.

20

21

22                                          In doing so, I impeded

23  intentionally the grand jury investigation.

24          I knew that this conduct was wrong.  I repent very

25  much and apologize for what I did.

1          THE COURT:  All right.  With respect to the money

2    laundering, I'm not quite sure I heard specific reference to

3    the laundering aspect of the scheme.  Did I miss something?

4    Have you reviewed this allocution?

5          MR. NORRIS:  I have, your Honor.  And I believe the

6    laundering is covered by the intentional transfers of money

7    intended to promote the scheme.

8          THE COURT:  As if to be legitimate?

9          MR. NORRIS:  No.  This is under the international

10   money laundering prong of the statute.  So it's simply

11   transfers to promote the scheme that were transferred from

12   within the United States outside of the United States.  That's

13   sufficient I believe.

14         THE COURT:  All right.

15         Is everyone satisfied with the allocution?

16         MR. NORRIS:  Just a couple of very quick things,

17   your Honor.  If I could put on the record and just ask that

18   the defendant agrees the enterprise that the defendant

19   described -- the enterprise that the defendant described in

20   connection with count one -- the activities of that enterprise

21   certainly affect both interstate and foreign commerce.

22         THE COURT:  As is apparent from the allocution.  I

23   do have one question before I make my finding.

24

25         Mr. Hawilla, could you very briefly just describe

1  for me the nature of your legitimate business and how you

2  derive income from it?

3              THE DEFENDANT:   A sports marketing company promotes

4  football -- soccer events, championships, tournaments and

5  events.  We bought the rights from the confederations and we

6  commercialized them in the whole world.  There are several

7  sources of income.  The main ones are television rights and

8  sponsorship rights.

9              THE COURT:  Okay.  I got it.  Sort of what I

10  assumed.

11              Based on the information given to me, I find that

12  the defendant is acting voluntarily and fully understands his

13  rights, the consequences and possible consequences of his

14  plea, and that there are factual bases for these pleas of

15  guilty.  I therefore, now, formally accept the pleas of guilty

16  to counts one, two, three and four of the information bearing

17  docket number 14-CR-609.

18              Mr. Hawilla, I urge you to cooperate at the

19  appropriate time with the probation department in their

20  preparation of the presentence report, consistent of course

21  with the advice of counsel.  At the government's request,

22  absent objection from the defense, we will set a control date

23  some six months down the road.

24              MR. NORRIS:  That would be perfect, your Honor.

25  Thank you.

Sealed By Order Of Court                    32

1           THE CLERK:  June 26 at 10:00 a.m. for a control

2    date.

3           THE COURT:  Obviously, any circumstances change,

4    please, inform the court.  If anything changes that may in any

5    way impact this court's decision to seal these proceedings,

6    inform the court immediately.  Understood?

7           MR. NORRIS:  Yes, your Honor.

8           THE COURT:  Anything else?

9           MR. NORRIS:  Just a few matters.  If I could just

10   put them on the record, your Honor?

11          THE COURT:  Please.

12          MR. NORRIS:  One:  The defendant in his agreement

13   has waived venue with respect to counts two and three.

14          THE COURT:  Let me deal with that.

15          do you understand what the assistant has just said?

16   If an offense is committed in a certain place, another

17   district, if you will, you have the right to have that offense

18   heard in that district.  You can consent to a change of venue

19   and have it heard in whatever district you consent to have it

20   heard in.  Contained in that agreement is a waiver of any

21   venue rights you may have with respect to counts two and three

22          Is that your understanding, Mr. Hawilla?

23          THE DEFENDANT:  Yes.

24          THE COURT:  And you so consent?

25          THE DEFENDANT:  Yes.

Sealed By Order Of Court                    33

1          THE COURT:  And you've conferred with counsel

2    regarding this?

3          THE DEFENDANT:  Yes.

4          MR. NORRIS:  A few other things, your Honor.

5          First, I don't believe your Honor asked whether the

6    defendant was satisfied with counsel.  If you could just put

7    that on the record, please.

8          THE COURT:  My oversight.

9          are you satisfied with your attorneys up until this

10   point?

11         THE DEFENDANT:  Yes.

12         MR. NORRIS:  If your Honor could also confirm that

13   the defendant authorized the waiver of his appearance at the

14   public proceeding?

15

16         THE COURT:  Earlier, before you entered the

17   courtroom I heard an application --

18         Mr. Hawilla is distracted.

19         (Pause.)

20         MR. S. KAUFMAN:  Can we have a moment, your Honor?

21         THE DEFENDANT:  Okay.  Yes.

22         THE COURT:  Earlier, before you entered the

23   courtroom, Mr. Hawilla, I heard an application by the

24   government, without opposition from your counsel, to seal this

25   courtroom.  Ordinarily proceedings in this courtroom are

1   public, available to anyone.   The government on your behalf

2   and on its behalf made an application to the court to seal

3   this proceeding and to close the courtroom.   I granted that

4   application.

5              My question to you is:   Were you aware that I would

6   be asked to do so and do you consent to it?

7              THE DEFENDANT:   Yes.

8              MR. NORRIS:   The last two things, your Honor:   We

9   just want to note for the record that because this is a sealed

10  proceeding, and not a public proceeding, no victim

11  notification has been required under the Under Justice For All

12  Act.

13             THE COURT:   So noted.

14             MR. NORRIS:   Last --

15             THE COURT:   Required at this time?

16             MR. NORRIS:   Absolutely.

17             We will certainly comply with our obligations once

18  the case is public.

19             And with respect to bail, we would just ask that the

20  defendant's bail conditions be continued and I would just note

21  specifically in terms of the location where he resides, we

22  previously applied to a magistrate court to allow the

23  defendant to reside ████████████████████████████████

24  ████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████

ANTHONY M. MANCUSO,   CSR   OFFICIAL COURT REPORTER

Sealed By Order Of Court                          35

1

2

3          THE COURT:   If the health continues, under the same

4    conditions.

5          MR. NORRIS:   Lastly, if we could hand up to the

6    court an order of forfeiture.

7          THE COURT:   I take it it's a preliminary order of

8    forfeiture.

9          MR. NORRIS:   Yes, your Honor.   And we have provided

10   that to counsel and counsel has reviewed it.

11         THE COURT:   Mr. Liman, you have reviewed this order?

12         MR. LIMAN:   We have, your Honor.

13         THE COURT:   Consistent with the terms of the

14   agreement?

15         MR. LIMAN:   It is and we agree to it.

16         THE COURT:   Okay.   Signed, sealed and delivered.

17   Anything else?

18         MR. NORRIS:   Nothing else from the government.

19         MR. LIMAN:   Nothing, your Honor thank you, your

20   Honor.

21         THE COURT:   Thank you for your time, Mr. Hawilla.

22   Take care of yourself.   We'll see you next time.

23         THE DEFENDANT:   Thank you.

24                          ooooooOoooooo

25